IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　Plaintiff,<br><br>v.<br><br>GBMC HEALTHCARE, INC. and GREATER BALTIMORE MEDICAL CENTER, INC.,<br><br>　　　Defendants. | CIVIL ACTION NO. 24-cv-02803<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act of 1990, as amended (the ADA), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, brought by the United States Equal Employment Opportunity Commission to correct, remedy, and prevent violations of the ADA and to provide appropriate relief to Charging Party Jennifer Hoffman. As alleged with greater particularity below, Defendants violated the ADA when they discriminated and retaliated against Charging Party.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12117(a), which incorporates by reference Title VII of the Civil Rights Act of 1964 (Title VII), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

1

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission (the EEOC or the Commission), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I and Title V of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

4. At all relevant times, Defendant GBMC HealthCare, Inc. has continuously been doing business in the state of Maryland, including in Towson, Maryland and has continuously had at least 15 employees.

5. At all relevant times, Defendant GBMC HealthCare, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12112(5), (7).

6. At all relevant times, Defendant Greater Baltimore Medical Center, Inc. has continuously been doing business in the state of Maryland, including in Towson, Maryland and has continuously had at least 15 employees.

7. At all relevant times, Defendant Greater Baltimore Medical Center, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12112(5), (7).

8. At all relevant times, Defendants have been a covered entity/entities as defined by the ADA.

## ADMINISTRATIVE PROCEDURES

9. More than thirty days prior to the institution of this lawsuit, Jennifer Hoffman filed a charge with the Commission (EEOC Charge No. 531-2023-02375) regarding alleged violations of the ADA by Defendants.

10. On June 14, 2024, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11. On August 30, 2024, the Commission issued to Defendants a Notice of Conciliation Failure advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of the lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13. Defendants GBMC HealthCare, Inc. and/or Greater Baltimore Medical Center, Inc. (hereinafter "GBMC") own and operate a healthcare facility that is located in Towson, Maryland.

14. The healthcare facility located in Towson, Maryland is known as the Greater Baltimore Medical Center or GBMC campus and consists of a main hospital and pavilions (hereinafter "GBMC campus").

15. Each Defendant is an employer of persons who work at the GBMC campus identified above and/or Defendants function as an integrated enterprise/single or joint employer of such persons.

16. Regarding the facts alleged and claims asserted in this Complaint, each named Defendant is an employer and/or Defendants functioned as an integrated enterprise, for purposes of the ADA.

17. Charging Party is a deaf woman.

18. On or about February 24, 2023, Charging Party submitted application materials seeking employment opportunities with Defendants and/or seeking employment opportunities at

the main hospital described above.

19. In connection with recruitment, hiring, and selection activities concerning the main hospital, each Defendant and/or Defendants create and/or maintain records that identify persons seeking or inquiring about employment opportunities at the GBMC campus and they contain communications and records of action taken regarding those applications or inquiries (hereinafter "GBMC records").

20. GBMC records include notes or entries made regarding Charging Party's interview, job offer, and status.

21. GBMC records indicate that Charging Party had previous experience providing direct care to developmentally disabled persons and previous experience working in managed healthcare.

22. GBMC records indicate that Charging Party had previous experience working as a Licensed Practical Nurse (LPN) at the Sinai Hospital in Baltimore, Maryland.

23. GBMC records indicate that Charging Party had obtained degrees and licensure in nursing including as a Registered Nurse (RN).

24. GBMC records indicate that a job offer was made to Charging Party to work as a Registered Nurse (RN) at the main hospital on the GBMC campus.

25. GBMC records indicate that the job offer described above in Paragraph 24 was made on March 6, 2023.

26. GBMC records indicate that Charging Party accepted the job offer described above in Paragraph 24 was made on March 6, 2023.

27. Before offering Charging Party a job to work as a Registered Nurse (RN) at the main hospital on the GBMC campus, a determination was made that Charging Party was qualified

for that job.

28. As of March 6, 2023, Brandon Lee was employed by one or both of the Defendants as a recruiter and/or in a recruiting capacity or role.

29. In the recruiter position and/or recruiting capacity or role that Brandon Lee held or performed, Brandon Lee had authority, by delegation or otherwise, to offer Charging Party a job to work at the main hospital on the GBMC campus.

30. Brandon Lee did offer Charging Party a job to work at the main hospital on the GBMC campus.

31. The job that Brandon Lee offered to Charging Party was a Registered Nurse (RN) position.

32. The job offer that Brandon Lee made to Charging Party was authorized or consented to by one or both of the Defendants by and through corporate management structure, chain of command, or authority.

33. After Charging Party accepted the job offer to work at the main hospital on the GBMC campus, she was scheduled by one or both of the Defendants to complete onboarding tasks.

34. After Charging Party accepted the job offer to work at the main hospital on the GBMC campus, she was scheduled by one or both of the Defendants to obtain a health assessment clearance.

35. After Charging Party accepted the job offer to work at the main hospital on the GBMC campus, she was scheduled by one or both of the Defendants to attend a meeting with GBMC Employee Health Services (EHS) department personnel.

36. Charging Party was advised or scheduled to attend a meeting with EHS at the GBMC campus, and that meeting was scheduled to occur on March 13, 2023.

37. Charging Party attended a meeting with EHS at the GBMC campus on March 13, 2023.

38. The EHS meeting that was conducted with Charging Party at the GBMC campus on March 13, 2023, was conducted, at least in part, by Ashley Hayes, who was employed by one or both of the Defendants at the time.

39. During the meeting with EHS, Charging Party was given a drug test, had blood drawn, and was asked about her medical history.

40. During the meeting with EHS, Charging Party told Ashley Hayes that she is deaf.

41. During the meeting with EHS, Charging Party asked Ashley Hayes for information about how to request accommodations for her hearing impairment. Hayes replied, in part, that Charging Party's healthcare provider had to complete certain forms, and then Charging Party had to return the completed forms to EHS. Charging Party was then given those forms.

42. The forms that EHS gave to Charging Party consisted of: (a) a form entitled "Memorandum"; (b) a form entitled "Health Care Assessment Provider Assessment Form"; and (c) a form at the top of which appears the following text: "Please identify the specific activity the employee may perform associated with their current position."

43. The "Memorandum" that is described above in Paragraph 42(a) consisted of a single page. The Memorandum form was addressed to "Examining Healthcare Provider." Regarding Charging Party, a healthcare provider completed the Memorandum form indicating that Charging Party could work immediately with accommodations.

44. Regarding Charging Party, a healthcare provider completed the Health Care Provider Assessment Form that is described above in Paragraph 42(b).

45. The Health Care Provider Assessment Form asked the healthcare provider whether

the employee has an impairment and, if so, to identify the impairment. The healthcare provider who completed the form identified deafness as Charging Party's only impairment.

46. The Health Care Provider Assessment Form asked the healthcare provider to answer whether the employee's impairment "substantially limit[s] a major life activity" and, if so, to review a list of activities and check the box next to each "activity(s)" that "is/are affected[.]" The list included 18 activities. One of the activities listed was "Hearing." Additionally, the following activities, among others, were included on that list: "Performing Manual Tasks," "Reaching," "Toileting," and "Lifting." Regarding Charging Party, the healthcare provider checked only the box indicating that Charging Party was limited in "Hearing." The healthcare provider did not check any other boxes/activities.

47. The Health Care Provider Assessment Form provided a section entitled "Restrictions" that included only the following typed text and/or instructions: "Please describe the *actual restrictions* that the employee has that should be considered in the workplace." (Emphasis in original). Regarding Charging Party, the healthcare provider referenced only a restriction on Charging Party entering MRI Zone 4.

48. The Health Care Provider Assessment form provided a section entitled "Accommodations Needed" that included the following typed text and/or instructions: "Based on the above restrictions please explain the type of accommodations you would suggest, and how it would improve the employee's job performance[.]" Regarding Charging Party, the healthcare provider wrote "See Back." On the back of that form, the healthcare provider wrote suggestions including providing a badge identifying Charging Party as hard-of-hearing so that others knew to speak to her slowly and clearly, a direct way for Charging Party to text her supervisor, access to power for cochlear implant charging, and another reference to MRI Zone 4.

49. Charging Party was not granted or provided with any accommodations including the badge identifying her as hard-of-hearing, a direct way to text her supervisor, and access to power for cochlear implant charging.

50. GBMC documentation shows that MRI Zone 4 (also referred to as "MRI Zone IV") is the room inside of which an MRI scanner is located. According to GBMC documentation, while the MRI scan is conducted the patient undergoing the scan is inside of the room where the MRI scanner is located, while the person who conducts, controls, and/or operates the MRI scanner is located in a different room called MRI Zone 3.

51. The person who conducts, controls, and/or operates the MRI scanner does so remotely while they are in MRI Zone 3.

52. At the GBMC campus, it is not an essential function of the RN to control or otherwise operate the MRI scanner.

53. Charging Party can enter MRI Zone 3.

54. GBMC documentation identifies and describes two other MRI Zones: MRI Zone 1 and MRI Zone 2.

55. Charging Party can enter MRI Zone 1 and MRI Zone 2.

56. Regarding the MRI Zones, Charging Party could perform all essential job functions with or without accommodation.

57. The third form that is described above in Paragraph 42(c), consists of a single page. That form does not contain the words "impairment," "accommodation," "disability," or "restriction" anywhere in the document.

58. Regarding Charging Party, a healthcare provider completed the third form that is described above in Paragraph 42(c).

59. The RN job description purporting to describe the position at GBMC that was offered to Charging Party includes a section entitled "Physical Requirements." In that section, only the following language appears: "Ability to stand and walk almost constantly up to 90% of the work time and lifting and positioning patients up to 50% of the work time."

60. The completed form described in Paragraph 42(c) indicates that Charging Party could perform the ability described in the "Physical Requirements" section of the RN job description for 50% of the work time and for more than 50% of the work time.

61. On March 15, 2023, Charging Party submitted the completed forms to the EHS department.

62. After Charging Party met with EHS on March 13, 2023, GBMC Nurse Manager Temitope Oseromi spoke to Charging Party and asked about her status. Charging Party told Oseromi that she is deaf and mentioned ADA accommodations. Oseromi responded unfavorably, including saying that she did not appreciate that Charging Party had not disclosed her hearing impairment earlier. Oseromi asked Charging Party what ADA accommodations she wanted and, when Oseromi heard that Charging Party was asking for permission to wear a hard-of-hearing badge, Oseromi said that it would make people uncomfortable to see her wearing such a badge.

63. On March 16, 2023, GBMC Nurse Manager Temitope Oseromi sent an email to GBMC personnel in which Oseromi referred to Charging Party's ADA accommodation "requests" and stated that GBMC could not accommodate the requests.

64. On Friday, March 17, 2023, Charging Party sent an email to Nurse Manager Temitope Oseromi saying that she had been told that ADA accommodations were being reviewed or considered, and inviting Oseromi to contact her with any questions or concerns. Oseromi did not respond or try to contact Charging Party.

65. On Monday, March 20, 2023, GBMC Nurse Manager Temitope Oseromi sent an email to Brandon Lee stating that no accommodations would be provided to Charging Party and stating that he should "move forward accordingly."

66. On March 20, 2023, Brandon Lee sent Charging Party an email stating that no accommodations would be provided to her. In that email, Brandon Lee stated that the employment offer that had been made to Charging Party was rescinded.

67. Charging Party attempted to engage with GBMC personnel, but they either did not respond, rejected her efforts, and/or refused to change their decisions.

68. Neither Defendant satisfied their ADA obligations to engage in an interactive process with Charging Party.

69. Charging Party is a qualified person with a disability, as defined by the ADA.

70. Each Defendant and/or Defendants denied reasonable accommodations to Charging Party.

71. Charging Party engaged in protected activity as defined by the ADA, including requesting, seeking, and/or engaging with the employer regarding accommodations.

72. Defendant Greater Baltimore Medical Center, Inc. decided not to hire Charging Party for the job at the GMBC campus that she was offered.

73. Defendant GBMC HealthCare, Inc. decided not to hire Charging Party for the job at the GBMC campus that she was offered.

74. Defendants jointly, and/or operating as an integrated enterprise, decided not to hire Charging Party for the job at the GBMC campus that she was offered.

75. In the alternative Defendant Greater Baltimore Medical Center, Inc. hired Charging Party for the job at the GBMC campus that she was offered, but later terminated her employment.

76. In the alternative Defendant GBMC HealthCare, Inc. hired Charging Party for the job at the GBMC campus that she was offered, but later terminated her employment.

77. In the alternative Defendants jointly, and/or operating as an integrated enterprise, hired Charging Party for the job at the GBMC campus that she was offered, but later terminated her employment.

78. The above facts, among others, demonstrate that each Defendant and/or Defendants violated the ADA when they engaged in prohibited conduct on the basis of disability regarding Charging Party including failing to engage in an interactive process; denying reasonable accommodations; rescinding a job offer; and refusing to hire Charging Party or terminating her.

79. The above facts, among others, demonstrate that each Defendant and/or Defendants took materially adverse action and unlawfully retaliated against Charging Party because she engaged in protected activity.

80. The effect of the practices described above has been to deprive Charging Party of rights secured to her by the ADA.

81. The unlawful employment practices complained of above were and are intentional.

82. The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining each Defendant, and each of their officers, agents, servants, employees, and all persons in active concert or participation with them, from maintaining or applying policies or practices that violate the ADA and from discriminating and retaliating in violation of the Act.

B.     Issue an Order compelling each Defendant to revise, reform, and/or eliminate the use of certain forms, processes, and/or practices that contributed or otherwise facilitated discrimination and/or retaliation and compel each Defendant to take action sufficient to prevent future ADA violations.

C.     Order Defendants to make whole Charging Party by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and/or appropriate front pay.

D.     Order Defendants to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.     Order Defendants to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial.

F.     Order Defendants to pay Charging Party punitive damages for their malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

JURY TRIAL DEMAND

The United States Equal Employment Opportunity Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

s/Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office

s/Kate Northrup
KATE NORTHRUP
Assistant Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office

s/Emily Datnoff
EMILY DATNOFF (Bar No. 29464)
Trial Attorney
United States Equal Employment
Opportunity Commission
Baltimore Field Office
31 Hopkins Plaza, 14th Floor
Baltimore, MD 21201
Emily.Datnoff@eeoc.gov
Telephone:      (410) 801-6708
Fax:            (443) 992-7880