## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIVIL NO. JKB-24-2803** |
| | * | |
| **GBMC HEALTHCARE, INC., *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiff United States Equal Employment Opportunity Commission ("EEOC") filed a Complaint against Defendants GBMC HealthCare, Inc. and Greater Baltimore Medical Center, Inc. alleging violations of the Americans with Disabilities Act ("ADA"). (*See generally* ECF No. 1.) Pending before the Court are Defendants' Motion to Dismiss (ECF No. 4) and the EEOC's Motion to Strike Defendants' Filings that Contain Unredacted Full Dates of Birth (ECF No. 14). For the reasons that follow, both Motions will be denied.

### I.    *Factual Background*

As an initial matter, the Court will not consider the documents Defendants attach to the Motion to Dismiss, as the Court will explain in more detail below. However, the Court of course cannot unsee those documents, and therefore also notes at the outset that the EEOC appears to have provided curiously selective quotes from certain documents—perhaps even bordering on misleading. The Court notes those instances below in footnotes accompanying a description of the facts.

The EEOC alleges that the Charging Party, Jennifer Hoffman, was offered a position to work as a Registered Nurse ("RN") by Brandon Lee, a recruiter. (ECF No. 1 at 4–5.) It appears that the offer was either made or accepted around March 6, 2023; the Complaint is not entirely clear. (*Id.* ("GBMC records indicate that Charging Party accepted the job offer described above in Paragraph 24 was made on March 6, 2023 [sic].").) The EEOC alleges that "[b]efore offering [Hoffman] a job to work as a Registered Nurse (RN) at the main hospital on the GBMC campus, a determination was made that [Hoffman] was qualified for that job." (*Id.* at 4–5.)

After Hoffman accepted the offer, she was scheduled to complete certain onboarding tasks. (*Id.* at 5.) During a meeting with GBMC Employee Health Services ("EHS") department personnel Ashley Hayes, Hoffman advised Hayes that she is deaf, and sought information regarding requesting accommodations for her hearing impairment. (*Id.* at 6.) Hayes provided forms for Hoffman's healthcare provider to complete with respect to accommodations. (*Id.*)

The EEOC alleges that Hoffman's healthcare provider completed the form, indicating that deafness was Hoffman's only impairment and, in the section regarding "actual restrictions," her healthcare provider indicated that Hoffman should not enter "MRI Zone 4." (*Id.* at 7.) The healthcare provider also filled out a section titled "Accommodations Needed." (*Id.*) As the EEOC puts it, the provider listed the following accommodations: "providing a badge identifying Charging Party as hard-of-hearing so that others knew to speak to her slowly and clearly, a direct way for Charging Party to text her supervisor, access to power for cochlear implant charging, and another reference to MRI Zone 4." (*Id.*)[1]

---

[1] The EEOC appears to have selectively quoted from this document (which Defendants attached to their Motion to Dismiss). First, although the EEOC states in its Complaint that there was "another reference to MRI Zone 4," the actual recommendation from the provider is as follows: "RN should not escort/accompany patient to MRI testing due to the fact that in the event of an emergency, this RN cannot safely enter Zone 4 to begin ACLS [Advanced Cardiac Life Support] protocol." (ECF No. 4-4 at 3.) Second, the form also provides certain limitations on lifting and carrying, and indicates that Hoffman can lift or carry "[u]p to 10 lbs." and "11-20 lbs." frequently (i.e., 36-66% of the time) and "21-50 lbs." and "51-100 lbs." occasionally (i.e., 1-33% of the time). (*Id.* at 4.)

As the EEOC explains, MRI Zone 4 is the room in which the MRI scanner is located. (*Id.* at 8.) The person who operates the scanner is in Zone 3 and, as the EEOC alleges, Hoffman can enter Zone 3 (as well as Zones 1 and 2, which are not defined in the Complaint). (*Id.*) The EEOC alleges that, "[r]egarding the MRI Zones, [Hoffman] could perform all essential job functions with or without accommodation" and that "it is not an essential function of the RN to control or otherwise operate the MRI scanner." (*Id.*)

Further, the EEOC explains that the job description for the RN position includes a section titled "Physical Requirements" which includes only the following: "Ability to stand and walk almost constantly up to 90% of the work time and lifting and positioning patients up to 50% of the work time." (*Id.* at 9.) The EEOC alleges that Hoffman's provider explained that she "could perform the ability described in the 'Physical Requirements' section of the RN job description for 50% of the work time and for more than 50% of the work time." (*Id.*)

Hoffman provided the forms to EHS on March 15, 2023. (*Id.*) The EEOC alleges that Hoffman told GBMC Nurse Manager Temitope Oseromi "that she is deaf and mentioned ADA accommodations. Oseromi responded unfavorably, including saying that she did not appreciate that [Hoffman] had not disclosed her hearing impairment earlier. Oseromi asked [Hoffman] what ADA accommodations she wanted and, when Oseromi heard that [Hoffman] was asking for permission to wear a hard-of-hearing badge, Oseromi said that it would make people uncomfortable to see her wearing such a badge." (*Id.*)

---

The Court must also note here that it does not find at all compelling the EEOC's cramped reading of this document. The EEOC attempts to argue that the form "make[s] clear that Hoffman did not have any impairment other than deafness and was not limited in any activities other than hearing" and that "[t]he only restriction that the provider listed for Hoffman was a restriction on her entering MRI Zone 4." (ECF No. 20 at 17 (emphasis in original) (citing ECF No. 4-4).) This is plainly contradicted by the document quoted above, and counsel are warned to proceed with caution in their representations to the Court.

On March 16, 2023, Oseromi "sent an email to GBMC personnel in which Oseromi referred to Charging Party's ADA accommodation 'requests' and stated that GBMC could not accommodate the requests." (*Id.*)[2]  On March 17, 2023, Hoffman emailed Oseromi "saying that she had been told that ADA accommodations were being reviewed or considered, and inviting Oseromi to contact her with any questions or concerns." (*Id.*)  Oseromi did not respond. (*Id.*)  On March 20, 2023, Oseromi contacted Lee, "stating that no accommodations would be provided to Charging Party and stating that he should 'move forward accordingly.'" (*Id.* at 10.)  Lee emailed Hoffman, stating that no accommodations would be provided and rescinding the offer. (*Id.*)

Based upon these allegations, the EEOC brings claims under the ADA.  Although the Complaint is oddly drafted, in that it does not include any delineated counts, the Court understands the EEOC to be bringing charges of discrimination and retaliation under the ADA.

## II.  *Motion to Dismiss*

### A.  *Legal Standard*

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the

---

[2] The EEOC again selectively quotes from this email (which, again, Defendants attach to their Motion to Dismiss).  The email at the beginning of the chain, from a GBMC Leave Management Specialist in EHS, references requested accommodations, explaining that "[t]he requested restrictions are as follows:

Be provided a direct way to text/contact a supervisor during a shift for call outs as needed.
Should be allowed access to a power outlet throughout their shift.
Should have a 'hard of hearing badge during codes so team members are aware to speak clearly and directly' to employee (Per provider's recommendation)
No escorting/accompanying patient to MRI testing.
Lifting 0-20 lbs. is limited to 34%-66% per shift.
Lifting 21-50 lbs. is limited to 1%-33% per shift.
Lifting 51T100 lbs. is limited to 1%-33% per shift."

(ECF No. 4-6.)  Thus, the EEOC has chosen to omit the lifting restrictions and the restriction from escorting and accompanying patients to MRI testing (i.e., not only MRI Zone 4) from its Complaint.  In the email, Oseromi responds: "Given the acuity of our patients in the ICUs, intensity of the nursing care required, and the level of the requests below, I am afraid that the department cannot accommodate these requests at this time.  I may mention that I first heard about the ADA request regarding the MRI after I had called the employee ahead of her start date today.  Here is my first time hearing about the lifting limitations." (*Id.*)

4

light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).   To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662.   A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### B. *Analysis*

#### 1. **Documents Attached to Defendants' Motion**

As an initial matter, the Court must determine precisely which documents it may consider in ruling on the Motion to Dismiss.   Typically, the Court examines only the allegations in the operative complaint.   However, a court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted).

Here, the EEOC cites generously to several of the relevant documents throughout its Complaint, but also questions—if somewhat half-heartedly—the authenticity of the documents provided by the Defendants.[3]   The Court also cannot conclude that the documents are "integral"

---

[3] The EEOC states that "[a]s a threshold matter, GBMC has not shown the Exhibits to be authentic and, therefore, the EEOC disputes authenticity." (ECF No. 20 at 15.)   While the Court is without any basis to determine the authenticity of these documents at this stage, the Court expects counsel to act professionally, and to not be unnecessarily argumentative as this case progresses.   To the extent these documents are shown to be authentic at later stages of litigation, the Court will not look upon such statements by counsel favorably.

to the Complaint. To be "integral," a document must be one "that by its very existence, and *not the mere information it contain*s, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation and internal quotation marks omitted) (emphasis in original). "[C]ourts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute." *Id.* at 611 n.4 (citation and internal quotation marks omitted). Further, the Court is mindful that documents may require context not present before the Court here. The Court will therefore not consider the documents attached by Defendants in ruling on the Motion to Dismiss.

However, as noted above, the Court cannot simply unsee the documents that it has seen. First, the Court certainly cannot conclude that it was improper for the Defendants to have attached the document to the Motion to Dismiss, given the EEOC's liberal (and apparently incomplete) citation to them in its Complaint. Second, and while the Court makes no conclusions at this stage, as the footnotes above make clear, it appears that the EEOC has very selectively quoted to certain documents. While the Court is not prepared to conclude that such selective quotation rises to the level of misleading, to the extent that these documents become part of the record at a later stage of the litigation and to the extent there is no additional context that explains the EEOC's selective quotations, the EEOC's use of these documents in its Complaint may become highly problematic.

The Court takes this opportunity to remind counsel of their professional obligations under the Federal Rules. Federal Rule of Civil Procedure 11(b) provides, *inter alia*, that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified,

6

will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." And, under Rule 11(c), counsel may be subject to sanctions if they violate Rule 11(b).

### 2. Discrimination Claim

The EEOC brings a discrimination claim under the ADA.

> Under the ADA, an employer is prohibited from "discriminat[ing] against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). Such unlawful discrimination can include the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ." *Id.* § 12112(b)(5)(A).

*Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (alterations in original). Further, "[a] 'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position[.]'" *Id.* (quoting 42 U.S.C. § 12111(8)). Thus, to establish a prima facie case of failure to accommodate under the ADA, the plaintiff must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Id.* (citation, quotation marks, and alterations omitted). An ADA plaintiff need not establish a prima facie case to survive a motion to dismiss, but these elements guide the Court's analysis as to whether the complaint plausibly establishes an entitlement to relief. *See Parker v. Children's Nat'l Med. Ctr., Inc.*, Civ. No. ELH-20-3523, 2021 WL 5840949, at *15 (D. Md. Dec. 9, 2021).

The parties primarily disagree about the third element: whether Hoffman was able to perform the essential functions of the position with a reasonable accommodation. Defendants argue that, because Hoffman "could not safely lift and position the hospital's most vulnerable patients in the event of an emergency and could not accompany her patients to an MRI testing

area," she could not perform essential job functions and therefore could not be accommodated. (ECF No. 4-1 at 2.)

Turning first to the Defendants' contention with respect to lifting patients, the job description provided the RN must have the "[a]bility to stand and walk almost constantly up to 90% of the work time and lifting and positioning patients up to 50% of the work time." (ECF No. 1 at 9.) Further, the EEOC alleges that Hoffman's provider concluded that she "could perform the ability described in the 'Physical Requirements' section of the RN job description for 50% of the work time and for more than 50% of the work time." (*Id.*) At this stage of the litigation, this is sufficient.[4] *See Williams v. BTST Servs., LLC*, Civ. No. BPG-21-1732, 2022 WL 846271, at *6 (D. Md. Mar. 22, 2022).

With respect to access to the MRI scanner, it is not clear at this stage what precisely constituted the RN's essential functions, and whether Hoffman's restrictions prevented her from accomplishing those functions. As Hoffman alleges, she could enter Zones 1 through 3, but not Zone 4, and she "could perform all essential job functions [relating to the MRI scanner] with or without accommodation" and that "it is not an essential function of the RN to control or otherwise operate the MRI scanner." (ECF No. 1 at 8.) Once again, at this stage of the litigation, this is enough. Whether operating the MRI scanner is an essential function of the RN position or whether being able to enter Zones 1 through 3 but not 4 would have permitted Hoffman to fulfill the

---

[4] The Defendants' point that Hoffman's provider indicated that she had more severe lifting restrictions is, of course, well-taken. However, as the Court explained, it will not consider this evidence at this stage of the litigation. Further, even if the Court were to consider these additional lifting restrictions, the Court is not in a position to conclude that those more severe lifting restrictions would prevent Hoffman from "lifting and positioning patients up to 50% of the work time."

Further, while neither party raises the issue, the Court notes that the disability at issue here is Hoffman's deafness. There are no allegations before the Court that she has a disability that makes her unable to lift. It is therefore not clear that—to the extent that the decision not to hire her was based upon her inability to lift—the ADA protects her.

essential functions of the position are questions of fact more appropriately resolved at summary judgment or trial.[5]

Further, with respect to the fourth element of a prima facie case—that the employer refused to make reasonable accommodations—the Fourth Circuit has explained that "implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atl. Cap. Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005). The EEOC has alleged that Defendants flatly refused the requested accommodations. This again is sufficient to survive dismissal. *See BTST Servs.*, 2022 WL 846271, at *6 (explaining that a plaintiff sufficiently alleged the fourth element of a prima facie case where a plaintiff alleged that her employer "ignored and dismissed" her inquiry regarding an accommodation).

In short, construing the allegations in the light most favorable to the EEOC, as the Court must at this stage, the discrimination claim survives the Motion to Dismiss, if only barely.

### 3. Retaliation Claim

The EEOC also brings a retaliation claim. Although it appears that the EEOC's claim here is more properly brought as a failure-to-accommodate claim, the Court will deny the Motion to Dismiss to the extent that it seeks to dismiss the retaliation claim.

"To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Requesting an accommodation is protected conduct, and having a job

---

[5] Once again, the Defendants' point that the documentation reflects that Hoffman could not accompany patients to the MRI scanner *at all* is well-taken. However, that evidence is not currently before the Court, and—as the Court suggested above—perhaps there is additional evidence that would provide the Court with helpful context. Further, even if the evidence were before it, the Court could not conclude at this stage of the litigation that accompanying patients to the MRI scanner is an essential function of the position.

offer rescinded is an adverse action.  And here, there appears to be a causal link: Hoffman requested accommodations and her offer was rescinded shortly thereafter.  Thus, the EEOC has sufficiently alleged a retaliation claim.

Defendants argue that "GBMC's determination . . . was a completely legitimate and a legal employment decision."  (ECF No. 4-1 at 16.)  They also argue that "GBMC evaluated Ms. Hoffman's restrictions, determined that her lifting restrictions and inability to accompany patients to MRI testing required GBMC to eliminate essential functions of Ms. Hoffman's job, that "GBMC rescinded Ms. Hoffman's offer of employment because she was admittedly not qualified for the job to which she applied, and that "[t]he ADA expressly permits GBMC's actions."  (*Id.*) While the Court understands the logic of this argument, it presupposes that Defendants' actions were lawful, a fact that remains to be seen.

Thus, for the foregoing reasons, the Court will deny Defendants' Motion to Dismiss.

### III.    *Motion to Strike*

Plaintiffs have filed a Motion to Strike Defendants' Filings that Contain Unredacted Full Dates of Birth.  (ECF No. 14.)  The EEOC explains that Defendants filed a document that includes Hoffman's full date of birth, but that Federal Rule of Civil Procedure 5.2 and this Court's Local Rules require the redaction of full dates of birth.  (*Id.*)  The EEOC asks that the Court "strike pages 3 and 4 of Defendants' Exhibit 2, filed at ECF No. 4-4 or, if specific pages cannot be stricken, strike ECF No. 4-4 in its entirety."  (*Id.*)  Defendants respond that they inadvertently did not redact that information, but that striking certain pages in their entirety is not appropriate.  (ECF No. 16.)

The Court will deny the EEOC's Motion to Strike, given that the Court finds that there is no reason to strike the relevant document in whole or in part.  The Court will direct the Clerk to seal ECF No. 4-4.  Defendants have already provided a properly redacted version of the document, at ECF No. 16-2.

10

*IV.*  *Conclusion*

For the foregoing reasons, it is ORDERED that:

1. Defendants' Motion to Dismiss (ECF No. 4) is DENIED.

2. The EEOC's Motion to Strike Defendants' Filings that Contain Unredacted Full Dates of Birth (ECF No. 14) is DENIED.

3. The Clerk is DIRECTED to place ECF No. 4-4 UNDER SEAL.  All other documents should remain unsealed.

DATED this _18_ day of April, 2025.

BY THE COURT:

James K. Bredar
United States District Judge

11